**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

FREDDIE MURRAY,

Plaintiff,

v. 1:25-cv-00554 (BKS/DJS)

POLICE OFFICER MICHAEL DEFRANCE, ID No. 231; POLICE OFFICER GARRETT LAPP; POLICE OFFICER SAVINO CITRINTI, ID No. 270; and POLICE OFFICER CHRISTOPHER ZAMBRELLA, ID No. 212, individually and in their official capacities,

Defendants.

---

**Appearances:**

*Plaintiff Pro Se*:
Freddie Murray
Kingston, New York 12401

*For Defendants:*
Michael T. Cook
Cook, Kurtz & Murphy, P.C.
85 Main Street
Kingston, New York 12401

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff pro se Freddie Murray brought this 42 U.S.C. § 1983 action against Defendants, City of Kingston Police Officers Michael Defrance, Garrett Lapp, Savino Citrinti,[1] and Christopher Zambrella. (Dkt. No. 1). The following claims survived the Court's 28 U.S.C. § 1915(e) review: (1) Plaintiff's false arrest claims against Defrance and Lapp, and (2) Plaintiff's

---

[1] The spelling of this officer's name is not consistent in the briefing. The Court has used the spelling in the complaint.

malicious prosecution claims against Defrance, Lapp, Citrinti, and Zambrella. (Dkt. Nos. 10, 11). Presently before the Court is Defendants' motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25). The motion is fully briefed. (Dkt. Nos. 25-1, 29, 30). For the reasons that follow, the motion is granted.

## II. FACTS[2]

On May 21, 2022, Citrinti and Zambrella responded to "a report of an unwanted subject" at a Kingston apartment. (Dkt. No. 1, ¶ 11). When they arrived, Citrinti spoke with Emily Bouton, Plaintiff's then-girlfriend. (*See id.*). Bouton reported that Plaintiff had "been hitting and choking her" but did not wish to "pursue" charges against him. (*Id.*). She requested only that Plaintiff "leave the apartment for good"; Plaintiff left "and was not allowed to return." (Dkt. No. 29, at 4). Bouton "never . . . filed a complaint report" with Kingston police. (*Id.*).

Three days later, Defrance and Citrinti "were assigned to investigat[e]" the May 21 incident. (Dkt. No. 1, ¶ 12). The two "responded to" the same apartment "to follow[] up with [Bouton] regarding [the] alleged domestic incident." (*Id.*). Bouton "was never taken to a hospital for her alleged injuries" and Defrance never offered Bouton "any medical attention." (*See* Dkt. No. 29, at 4–5, 6). Defrance "explained to . . . Bouton that he would be pursing the charges against" Plaintiff. (Dkt. No. 1, ¶ 12). Plaintiff was never "charged with criminal assault." (Dkt. No. 29, at 6).

On May 25, Defrance—together with Lapp—responded to the apartment once again "to check the residence for Plaintiff." (Dkt. No. 1, ¶ 13). Bouton answered the door when the

---

[2] The facts are drawn from the complaint, (Dkt. No. 1), as well as Plaintiff's opposition to the motion to dismiss, to the extent it is consistent with the complaint's allegations. *See Gadson v. Goord*, No. 96 Civ. 7544, 1997 WL 714878, at *1 n.2, 1997 U.S. Dist. LEXIS 18131, at *2 n.2 (S.D.N.Y. Nov. 17, 1997) (Sotomayor, J.) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)); *see also Anderson v. City of New York*, 712 F. Supp. 3d 412, 421 n.1 (S.D.N.Y. 2024). The Court assumes the truth of, and draws all reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

officers knocked, and the two "entered the apartment asking for Plaintiff." (*Id.*). They found Plaintiff in the bedroom, telling him, "we are placing you under arrest." (*Id.*). Plaintiff asked Defrance whether the officers had a warrant for his arrest; he asked both to see the warrant. (*Id.*). Defrance, however, "became irate" and "grabb[ed] Plaintiff by the arm," "turned Plaintiff around," and "put handcuffs on him." (*Id.*).

The two then transported Plaintiff to the Kingston police station, informing him "that he was charged with Obstruction of Breathing." (*Id.* ¶ 14). He remained detained at the Kingston city jail until his arraignment the next day, when he was released subject to an order of protection. (*Id.*). Plaintiff attended multiple court dates between May and October 2022, none of which Bouton attended. (*See id.* ¶ 15). In December 2022, "the criminal charges against Plaintiff [were] reduced to Harassment 2nd and dismissed in the furtherance of [j]ustice and sealed." (*Id.*). By February 2023, Plaintiff received "notification from the Ulster County Clerk's office informing him that the charges" had been dismissed. (*Id.*).

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Because Plaintiff proceeds pro se, the Court liberally construes his submissions and "interpret[s] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation modified).

## IV. DISCUSSION

### A. False Arrest and Malicious Prosecution

Defendants primarily argue that the complaint fails to plausibly allege the absence of probable cause, a required element of Plaintiff's false arrest and malicious prosecution claims. (Dkt. No. 25-1, at 6–8). Plaintiff disagrees. (*See* Dkt. No. 29, at 4–6).

A § 1983 "claim for false arrest is substantially the same as a claim for false arrest under New York law." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)). Under New York law, "a plaintiff must adequately allege '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (quoting *Aponte v. Perez*, 75 F.4th 49, 59–60 (2d Cir. 2023)). A confinement is privileged if it is based on probable cause. *See, e.g.*, *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015). "Probable cause to arrest requires that the totality of facts and circumstances known to the police permit a person of reasonable caution to conclude that there is a fair probability that the person to be seized has committed or is committing a crime." *United States v. Lefebvre*, 117 F.4th 471, 476 (2d Cir. 2024) (citation modified); *cf. Illinois v. Gates*, 462 U.S. 213, 238 (1983).

To prevail on a § 1983 malicious prosecution claim, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). "Under New York law, a malicious-prosecution claim requires a

plaintiff to show '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "No claim for malicious prosecution can survive if there was probable cause for the prosecution." *Buari v. City of New York*, 530 F. Supp. 3d 356, 384 (S.D.N.Y. 2021) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)); *see Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996) (explaining that plaintiffs bear the "burden" of "establishing the requisite element of lack of probable cause"). "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Carruthers*, 153 F.4th at 181 (citation modified).

Here, the complaint fails to plausibly allege the absence of probable cause—either for Plaintiff's arrest, or for his prosecution—so the false arrest and malicious prosecution claims must be dismissed. A person commits "criminal obstruction of breathing . . . when, with intent to impede the normal breathing . . . of another person, he . . . applies pressure on the throat or neck of such person." N.Y. Penal Law § 121.11(a). Before Plaintiff's arrest and prosecution, Citrinti and Zambrella responded to "a report of an unwanted subject," and Bouton told them that Plaintiff had "been hitting and choking her." (Dkt. No. 1, ¶ 11). Defrance and Citrinti later visited the apartment again and followed up with Bouton, before Defrance and Lapp arrested Plaintiff. (*See id.* ¶¶ 12–13). The complaint contains no facts suggesting that any officer, at the time of Plaintiff's arrest and prosecution, had any information calling into question the veracity of Bouton's account. Based on that account, officers had probable cause to believe that Plaintiff had "applie[d] pressure to [Bouton's] throat or neck" with the "intent to impede [her] normal

breathing." *See* § 121.11(a); *see also Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[P]robable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (citation modified)).

Plaintiff points to several facts he says demonstrate the absence of probable cause, none of which alter the Court's conclusion. Specifically, Plaintiff notes that (1) Bouton never "filed a complaint report with" Kingston police; (2) Bouton stated she "did not want to pursue charges"; (3) Bouton "was never taken to a hospital for her alleged injuries"; (4) Defrance never offered Bouton "any medical attention"; and (5) officers never charged Plaintiff "with criminal assault." (*See* Dkt. No. 29, at 4–5, 6). But "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citation modified). It "does not demand certainty." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (citing *Gates*, 462 U.S. at 238). Even considering the facts Plaintiff highlights—none of which call in to question Bouton's reliability or veracity—a reasonably prudent person would still conclude that there was a fair probability Plaintiff had committed a violation of § 121.11(a). *See Gates*, 462 U.S. at 238; *Betts*, 751 F.3d at 82. Accordingly, the complaint fails to plausibly allege the absence of probable cause to arrest or prosecute Plaintiff, and his false arrest and malicious prosecution claims fail. *Carruthers*, 153 F.4th at 179; *Manganiello*, 612 F.3d at 160–61. In light of this conclusion, the Court need not address Defendants' alternative merits arguments. (Dkt. No. 25-1, at 9–10; Dkt. No. 30, at 6).

### B. Leave to Amend

A court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam)). Although Plaintiff has not identified any facts that would "cure" the deficiencies identified above, the Court will grant Plaintiff leave to file an amended complaint raising the false arrest and malicious prosecution claims that survived § 1915(e) review. *See id.*; *see also Mandala v. NTT Data, Inc.*, 88 F.4th 353, 363 (2d Cir. 2023) ("[I]n the absence of a valid rationale like undue delay or futility, it is improper to simultaneously dismiss a complaint with prejudice under Rule 12(b)(6) and deny leave to amend when the district court has not adequately informed the plaintiffs of its view of the complaint's deficiencies.").

Any amended complaint must be filed within thirty (30) days of the date of this order. The amended complaint will entirely replace the existing complaint and must be a wholly integrated and complete pleading not combined with any other document. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). It also must not rely upon or incorporate by reference any pleading or document previously filed with the Court, including the existing complaint. Instead, the amended complaint itself must contain all the specific factual allegations Plaintiff wishes the Court to consider in connection with his claims.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's pending letter motion seeking appointment of counsel (Dkt. No. 27) is **DENIED without prejudice** as moot; and it is further

**ORDERED** that Plaintiff may file an amended complaint, addressing the deficiencies described above as to his false arrest and malicious prosecution claims, within **thirty (30) days** of the date of this order. If Plaintiff fails to file an amended complaint within that time, the Clerk is respectfully directed to enter judgment and close this case; and it is further

**ORDERED** that the Clerk is respectfully directed to serve a copy of this decision and unpublished case law on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 3, 2026
Syracuse, New York

Brenda K. Sannes
Brenda K. Sannes
Chief U.S. District Judge